UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MARC SMITH, on behalf of himself and others similarly situated, | Civil Action No.: 21-2019 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE CBE GROUP, INC., | |
| Defendant. | |

**Nature of Action**

1. This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for the benefit of Iowa and Texas consumers who have been the subject of debt collection efforts by The CBE Group, Inc. ("Defendant").

2. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

3. As the Consumer Financial Protection Bureau ("CFPB")—the federal agency tasked with enforcing the FDCPA—explained, "[h]armful debt collection practices remain a

significant concern today. In fact, the CFPB receives more consumer complaints about debt collection practices than about any other issue."[1]

4. This case centers on Defendant's practice of continuing to attempt to collect debts from consumers following Defendant's receipt of written notifications of refusal to pay or written notifications that Defendant should cease communications, in violation of the FDCPA.

**Parties**

5. Marc Smith ("Plaintiff") is a natural person who at all relevant times resided in Dallas County, Texas.

6. Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

7. Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a Charter Communications, Inc. ("Charter") cable bill (the "Debt").[2]

8. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

9. Defendant is a wholly owned subsidiary of CBE Companies, a global call center outsourcing company specialized in collections operations.

10. Defendant has its principal place of business in Black Hawk County, Iowa.

---

[1] *See* Brief for the CFPB as Amicus Curiae, Dkt. No. 14, p. 10, *Hernandez v. Williams, Zinman, & Parham, P.C.*, No. 14-15672 (9th Cir. Aug. 20, 2014), http://www.ftc.gov/system/files/documents/amicus_briefs/hernandez-v.williams-zinman-parham-p.c./140821briefhernandez1.pdf (last accessed February 22, 2021).

[2] Charter markets its services under the tradename Spectrum.

11. Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

12. Upon information and belief, at the time Defendant attempted to collect the Debt from Plaintiff, the Debt was in default, or Defendant treated the Debt as if it were in default from the time that Defendant acquired it for collection.

13. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

14. Defendant represented to Plaintiff that it was a debt collector.

15. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

**Jurisdiction and Venue**

16. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

17. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as Defendant has its principal place of business in this district.

**Factual Allegations**

18. On May 18, 2016, Charter acquired Time Warner Cable.[3]

19. On or about January 3, 2017, Defendant sent an initial written communication to Plaintiff in connection with the collection of the Debt.

---

[3] *See* https://money.cnn.com/2016/05/18/media/time-warner-cable-charter/index.html (last accessed February 22, 2021).

20. A true and correct copy of the January 3, 2017 communication to Plaintiff is attached as Exhibit A.

21. The January 3, 2017 communication advised Plaintiff that Time Warner Cable had referred the Debt in the amount of $155.43 to Defendant for collection. *Id*.

22. The January 3, 2017 communication listed Time Warner Cable as the "Creditor." *Id*.

23. The January 3, 2017 communication advised Plaintiff that he could pay the Debt in full or that Defendant may report the Debt to one or more of the three national credit bureaus after the fortieth day from the date of the letter. *Id*.

24. The January 3, 2017 communication then advised Plaintiff that he had thirty days to dispute the Debt with Defendant. *Id*.

25. On or about February 13, 2017, Defendant sent a written communication to Plaintiff in connection with the collection of the Debt.

26. A true and correct copy of the February 13, 2017 communication to Plaintiff is attached as Exhibit B.

27. The February 13, 2017 communication advised Plaintiff that Defendant had attempted to contact Plaintiff about the Debt in the amount of $155.43. *Id*.

28. The February 13, 2017 communication then advised Plaintiff that he could contact Defendant for alternative payment arrangements if he could not pay the Debt in full. *Id*.

29. On or about February 9, 2018, Plaintiff mailed a letter to Defendant demanding that it cease collecting the Debt from Plaintiff and disputing that he owed the Debt.

30. A true and correct copy of the February 9, 2018 communication to Defendant is attached as Exhibit C.

31. On or about August 12, 2020, Defendant sent a written communication to Plaintiff in connection with the collection of the Debt.

32. A true and correct copy of the August 12, 2020 communication to Plaintiff is attached as Exhibit D.

33. The August 12, 2020 communication advised Plaintiff that Charter had referred the Debt in the amount of $155.43 to Defendant for collection. *Id*.

34. The August 12, 2020 communication listed Charter as the "Creditor." *Id*.

35. The August 12, 2020 communication advised Plaintiff that Defendant was committed to helping him resolve the Debt. *Id*.

36. The August 12, 2020 communication then advised Plaintiff that he had thirty days to dispute the Debt with Defendant. *Id*.

37. In response, on September 21, 2020, Plaintiff was forced to send another letter to Defendant demanding that it cease and desist collecting the Debt and disputing that he owed the Debt.

38. A true and correct copy of the September 21, 2020 communication to Defendant is attached as Exhibit E.

39. Thereafter, on November 2, 2020, Defendant again sent a written communication to Plaintiff in connection with the Debt.

40. A true and correct copy of the November 2, 2020 communication to Plaintiff is attached as Exhibit F.

41. The November 2, 2020 communication noted that Defendant had submitted Plaintiff's "inquiry" to its client, Charter. *Id*.

42. The November 2, 2020 communication advised Plaintiff that Charter's response to Plaintiff's "inquiry" was enclosed.

43. Defendant's response included account statements on Time Warner Cable letterhead and also account statements on Spectrum letterhead.

44. Some of the account statements noted that "Time Warner Cable is now Spectrum."

45. The account statements neither mention Charter nor describe Time Warner Cable or Spectrum's relationship to Charter.

46. The November 2, 2020 communication then advised Plaintiff that he owed $155.43 and encouraged Plaintiff to contact one of Defendant's representatives to arrange payment. *Id*.

## Class Action Allegations

47. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of:

> All persons (a) with a Texas or Iowa address, (b) to whom The CBE Group, Inc. mailed a debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) following The CBE Group, Inc.'s receipt from the consumer of a written notification that he or she refused to pay the debt or that the consumer wished that The CBE Group, Inc. cease further communication with the consumer.

48. Excluded from the class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

49. The proposed class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

50. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

51. The proposed class is ascertainable because it is defined by reference to objective criteria.

52. In addition, upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

53. The proposed class satisfies Rules 23(a)(2) and (3) because Plaintiff's claims are typical of the claims of the members of the class.

54. To be sure, Plaintiff's claims and those of the members of the class originate from the same standardized initial debt collection conduct utilized by Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class.

55. Plaintiff satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

56. Plaintiff has no interests that are contrary to or in conflict with the members of the class that he seeks to represent.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since, upon information and belief, joinder of all members is impracticable.

58. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

59. There will be no difficulty in the management of this action as a class action.

60. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

61. Among the issues of law and fact common to the class are:

    a. Defendant's violations of the FDCPA as alleged herein;

    b. whether Defendant is a debt collector as defined by the FDCPA;

    c. the availability of statutory penalties; and

    d. the availability of attorneys' fees and costs.

**Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c)**

62. Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 61 above.

63. The FDCPA at 15 U.S.C. § 1692c(c) provides:

> (c) Ceasing communication
>
> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

64. Plaintiff notified Defendant in writing on February 9, 2018 and again on September 21, 2020 that he disputed owing the Debt and that Defendant should cease collecting the Debt from Plaintiff.

65. No matter, Defendant continued to further communicate with Plaintiff in connection with the collection of the Debt by way of its collection letters dated August 12, 2020 and November 2, 2020.

66. Defendant did not send its August 12, 2020 and November 2, 2020 collection letters to Plaintiff solely for the purpose of (1) advising him that Defendant's collection efforts were being terminated; (2) notifying him that Defendant or Time Warner Cable/Charter may invoke specified remedies; or (3) notifying him that Defendant or Time Warner Cable/Charter intended to invoke a specified remedy.

67. As a result, Defendant violated 15 U.S.C. § 1692c(c).

68. The harm suffered by Plaintiff is particularized in that the violative debt collection conduct was directed at him personally and regarded a debt he is alleged to owe.

69. Congress created a statutory right for a consumer to elect to be free from having to communicate directly with a debt collector outside of litigation, and Defendant violated that right.

70. And Defendant's violations created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA. *See, e.g.*, *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692-93 (8th Cir. 2017) (holding plaintiff alleged a concrete injury in fact in FDCPA case where he was served discovery requests on a debt he did not owe and defendant made a false threat to proceed to trial, which created a risk of mental distress).

71. Indeed, a consumer whose cease-communication request is met by further collection efforts by a debt collector is likely to suffer mental distress and anxiety, and is more likely to succumb to abusive debt collection practices.

72. Moreover, Defendant's conduct caused actual harm to Plaintiff.

73. That is, Defendant's conduct in continuing to attempt to collect the Debt after Plaintiff had directed Defendant to cease communications caused Plaintiff mental distress and anxiety.

74. Further, Plaintiff was forced to spend time and energy to draft and mail a second letter to Defendant demanding that it cease communications with him, and incurred costs by way of materials and postage to mail the second letter.

75. Finally, as a result of Defendant's failure to comply with 15 U.S.C. § 1692c(c), Plaintiff suffered an invasion of his privacy—a core concern animating the FDCPA— by way of unwanted communications from Defendant after it was on notice that it should no longer communicate with him. *Accord Sandusky Wellness Center, LLC v. MedTox Sci. Inc.*, 250 F. Supp. 3d 354, 357-58 (D. Minn. 2017) (noting that unwanted robocalls and faxes have been found to be an invasion of privacy).

**Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d**

76. Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 61 above.

77. The FDCPA at 15 U.S.C. § 1692d provides "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

78. Plaintiff notified Defendant in writing on February 9, 2018 and again on September 21, 2020 that he disputed owing the Debt and that Defendant should cease collecting the Debt from Plaintiff.

79. No matter, Defendant ignored Plaintiff's lawful requests and continued to pressure Plaintiff to pay the Debt by way of its collection letters dated August 12, 2020 and November 2, 2020.

80. As a result, Defendant engaged in conduct the natural consequence of which was to harass and abuse Plaintiff in connection with the collection of the Debt.

81. The harm suffered by Plaintiff is particularized in that the violative debt collection conduct was directed at him personally and regarded a debt he is alleged to owe.

82. Congress created a statutory right for a consumer to elect to be free from having to communicate directly with a debt collector outside of litigation, and Defendant violated that right.

83. And Defendant's violations created a material risk of harm to the concrete interest Congress was trying to protect in enacting the FDCPA. *See*, *e.g.*, *Demarais*, 869 F.3d at 692-93 (holding plaintiff alleged a concrete injury in fact in FDCPA case where he was served discovery requests on a debt he did not owe and defendant made a false threat to proceed to trial, which created a risk of mental distress).

84. Indeed, a consumer whose cease-communication request is met by further collection efforts by a debt collector is likely to suffer mental distress and anxiety, and is more likely to succumb to abusive debt collection practices.

85. Moreover, Defendant's conduct caused actual harm to Plaintiff.

86. That is, Defendant's conduct in continuing to attempt to collect the Debt after Plaintiff had directed Defendant to cease communications caused Plaintiff mental distress and anxiety.

87. Further, Plaintiff was forced to spend time and energy to draft and mail a second letter to Defendant demanding that it cease communications with him, and incurred costs by way of materials and postage to mail the second letter.

88. Finally, as a result of Defendant's failure to comply with 15 U.S.C. § 1692d, Plaintiff suffered an invasion of his privacy—a core concern animating the FDCPA— by way of unwanted communications from Defendant after it was on notice that it should no longer communicate with him. *Accord Sandusky Wellness Center, LLC*, 250 F. Supp. 3d at 357-58 (noting that unwanted robocalls and faxes have been found to be an invasion of privacy).

**Count III: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e**

89. Plaintiff repeats and re-alleges the factual allegations contained in paragraphs 1 through 61 above.

90. The FDCPA at 15 U.S.C. § 1692e provides, in pertinent part, that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

91. Plaintiff notified Defendant in writing on February 9, 2018 and again on September 21, 2020 that he disputed owing the Debt and that Defendant should cease collecting the Debt from Plaintiff.

92. No matter, Defendant continued to further communicate with Plaintiff in connection with the collection of the Debt by way of its collection letters dated August 12, 2020 and November 2, 2020.

93. Defendant's August 12, 2020 and November 2, 2020 collection letters were not sent to Plaintiff solely for the purpose of (1) advising him that Defendant's collection efforts were being terminated; (2) notifying him that Defendant or Time Warner Cable/Charter may

invoke specified remedies; or (3) notifying him that Defendant or Time Warner Cable/Charter intended to invoke a specified remedy.

94. Moreover, Defendant's identification at separate times of both Time Warner Cable and Charter as the "creditor" to whom the Debt was owed was false, deceptive and misleading because only of those entities could be the creditor to whom the Debt was owed, particularly considering that the corporate merger had taken place long before the collection letters at issue.

95. As a result, Defendant's collection letters could be interpreted by the least sophisticated consumer in two different ways, once of which was inaccurate.

96. Finally, as set forth in his letters to Defendant, Plaintiff does not owe the Debt as it was incurred by another person.

97. Thus, Defendant is attempting to collect a debt from Plaintiff that is not owed.

98. As a result, Defendant violated 15 U.S.C. § 1692e.

99. The harm suffered by Plaintiff is particularized in that the violative debt collection conduct was directed at him personally and regarded a debt he is alleged to owe.

100. Congress created a statutory right for a consumer to elect to be free from having to communicate directly with a debt collector outside of litigation, and Defendant violated that right.

101. And Defendant's debt collection conduct created a material risk of harm to that concrete interest Congress was trying to protect in enacting the FDCPA. *See, e.g., Demarais*, 869 F.3d at 692-93 (holding plaintiff alleged a concrete injury in fact in FDCPA case where he was served discovery requests on a debt he did not owe and defendant made a false threat to proceed to trial, which created a risk of mental distress).

102. Indeed, a consumer whose cease-communication request is met by further collection efforts by a debt collector is likely to suffer mental distress and anxiety, and is more likely to succumb to abusive debt collection practices. *See* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors….").

103. And a consumer who is told that his debt is owed to two different entities is likely to be confused as to which entity owns his debt, and therefore more likely to fall victim to financial issues the FDCPA is intended to prevent, like paying the wrong entity.

104. Moreover, Defendant's conduct caused actual harm to Plaintiff.

105. That is, Defendant's conduct in continuing to attempt to collect the Debt after Plaintiff had directed Defendant to cease communications caused Plaintiff mental distress and anxiety.

106. Further, Plaintiff was forced to spend time and energy to draft and mail a second letter to Defendant demanding that it cease communications with him, and incurred costs by way of materials and postage to mail the second letter.

107. Additionally, Defendant has caused harm to Plaintiff's credit and reputation by reporting to the credit reporting bureaus that he is delinquent on a debt that he does not actually owe.

108. Finally, Plaintiff suffered an invasion of his privacy—a core concern animating the FDCPA— by way of unwanted communications from Defendant after it was on notice that it should no longer communicate with him. *Accord Sandusky Wellness Center, LLC*, 250 F. Supp. 3d at 357-58 (noting that unwanted robocalls and faxes have been found to be an invasion of privacy).

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging and declaring that Defendant violated 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692d and 15 U.S.C. § 1692e;

C. Awarding Plaintiff and members of the class statutory damages pursuant to 15 U.S.C. § 1692k;

D. Awarding Plaintiff and members of the class actual damages incurred, as applicable, pursuant to 15 U.S.C. § 1692k;

E. Enjoining Defendant from future violations of 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692d and 15 U.S.C. § 1692e with respect to Plaintiff and the class;

F. Awarding Plaintiff and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

G. Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

H. Awarding other and further relief as the Court may deem just and proper.

## Trial by Jury

Plaintiff is entitled to and hereby demands a trial by jury.

Dated: March 12, 2021				Respectfully submitted,


				<u>/s/ Eric D. Puryear</u>
				Eric D. Puryear, AT0010498
				Puryear Law, P.C.
				3719 Bridge Ave. #6
				Davenport, IA 52807
				Tel: (563) 265-8344
				Fax: (866) 415-5032
				eric@puryearlaw.com

				Associate Counsel

				James L. Davidson*
				Greenwald Davidson Radbil PLLC
				7601 N. Federal Hwy, Suite A-230
				Boca Raton, FL 33487
				Tel: (561) 826-5477
				jdavidson@gdrlawfirm.com

				Counsel for Plaintiff and the proposed class

				* to seek admission *pro hac vice*